Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Andrea R. Gold (*pro hac vice forthcoming*)
*agold@tzlegal.com*
David W. Lawler (*pro hac vice forthcoming*)
*dlawler@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD GOETZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Richard Goetz ("Plaintiff"), by and through counsel, brings this Class Action Complaint ("Complaint") against Defendant Apple Inc. ("Apple" or "Defendant"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this putative class action against Apple Inc. ("Apple") arising from Apple's practice of marketing and selling premium watches supported by watchOS software only to unfairly terminate the provision of software support updates before the end of the useful life of the watch.

2. Apple sells smartwatches that are mini-computers in wristwatch form for a premium price—ranging from $250 to $799. For these wrist-sized computers to operate as they did at the time of sale, the watches require updated watchOS software. Access to software updates to keep watchOS functioning is a core component of the computer watch that consumers buy.

3. Recently, though, when Apple introduced its most recent watch software version—watchOS 27—Apple decided to discontinue support for almost half of the Apple watches supported by watchOS software. With this one update, Apple killed updated software support for five generations of Apple Watches.

4. Specifically, Apple's recent update to watchOS 27 is incompatible with several versions of Apple's watches, including the SE 2, Series 6, Series 7, Series 8, Ultra 1 (hereafter "Apple Watches" or "Watches"), which were all sold in the last few years—and none of which had reached their useful lives as computer devices. Even though these watches had only been sold within the last few years, Apple rendered them obsolete with WatchOS 27—forcing consumers to replace them with a new device, such as Apple's new watches that are supported by their current software.

5. Instead of receiving the necessary updates required for these Apple Watches to continue functioning as sold, watchOS 26, which was on these Watches before the update, will remain on the Watches with no further update. As a result, these Watches will become increasingly ridden with software bugs causing their functioning to slow, or causing them to cease functioning entirely. Either way—if the device stops working entirely or as it becomes increasingly dysfunctional—Apple ensures that consumers have to buy a new computer watch to replace the old one that doesn't work correctly because it lacks

Apple's software support updates. As a result of its unfair practice of terminating software support, Apple forces consumers to replace these Watches even though Apple could have kept them alive and functioning as they did at sale—had Apple not gutted their software support by leaving these versions behind before the end of the useful life of the hardware itself.

6. Even though some of the Apple Watches may continue to function, albeit more slowly and with more bugs, while others get hung up and die completely, either way, the Watches functionality, compatibility, and expected useful life were materially diminished by Apple's intentional decision to abandon them.

7. Apple never disclosed, before or at the time of purchase, how long these products would remain eligible to receive future major versions of watchOS. Nor did Apple disclose that consumers purchasing premium Apple Watch devices could lose eligibility for future major operating-system updates years before the hardware itself reached the end of its expected useful life.

8. Apple alone determined when consumers' Apple Watch devices would become ineligible for future major watchOS releases, and consumers had no ability to prevent, postpone, or opt out of that decision.

9. Reasonable consumers purchasing premium Apple Watches expected that those devices would continue receiving major watchOS updates so long as the Watch-hardware remained in working condition. Their reasonable beliefs were consistent with Watches' purchase price, Apple's marketing, and the expected lifespan of premium wearable technology.

10. Plaintiff and members of the proposed Class would not have purchased their Apple Watch devices, or would have paid substantially less for them, had Apple disclosed that the devices would lose eligibility for future major versions of watchOS years before consumers reasonably expected.

11. Apple's conduct constitutes unfair business practices and deprived Plaintiff and the proposed Class of the benefit of their bargain. As a direct and proximate result of Apple's conduct, Plaintiff and Class Members suffered economic injury, including diminished product value, reduced expected useful life, accelerated software obsolescence, and the need to replace otherwise functional devices sooner than reasonably anticipated.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class consists of more than 100 members, and at least one member of the proposed Class is a citizen of a state different from Defendant.

13. This Court has personal jurisdiction over Defendant Apple Inc. because Apple is incorporated in California and maintains its principal place of business at One Apple Park Way, Cupertino, California. Apple is therefore "at home" in this District and subject to general personal jurisdiction.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Apple resides in this District, maintains its principal executive offices here, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

15. The policies and practices challenged in this action—including Apple's decisions regarding the software support applicable to the Watches, its decisions concerning eligibility for future major versions of watchOS, its marketing and disclosure practices, and its decision not to disclose the software support time period to consumers before or at the time of purchase—were developed, directed, approved, and implemented from Apple's headquarters in Cupertino, California.

## PARTIES

16. Plaintiff Richard Goetz ("Plaintiff") is and at all times relevant herein was a citizen and resident of the State of California.

17. On or about December 17, 2022, Plaintiff purchased an Apple Watch Ultra GPS + Cellular, 49mm Titanium Case with Midnight Ocean Band from Apple's Stonestown retail store in San Francisco, California for approximately $799.00. At the time of purchase, Plaintiff also purchased AppleCare+ coverage for the device.

18. Plaintiff purchased the Apple Watch Ultra for his personal use.

19. Apple develops, designs, markets, and administers the software ecosystem for Apple Watches, including watchOS compatibility decisions and the time period that the Apple Watches will receive software support, from its headquarters in Cupertino, California. Apple implements those policies uniformly throughout the United States.

## FACTUAL ALLEGATIONS

### I. Apple's Sale of Smart Watches at a Premium Price and Intentional Retirement of the Watches Constitutes an Unfair "Software Tethering" and "Bricking" Practice

20. Manufacturers like Apple are incentivized to render devices obsolete so that they can manufacture and sell new ones. Increasingly, by intentionally deciding to support devices software functionality that existed at sale, companies like Apple unilaterally, and, prematurely, decide that devices are obsolete even though the actual hardware of the device itself has not run its useful life and functions perfectly. Left with a device that is either useless or with less software functionality than they bargained for at the outset, consumers are forced to update their devices—often from the same manufacturers.

21. In a recent staff report, the Federal Trade Commission ("FTC") acknowledged the harm that results when manufacturers cut back on making software updates to "smart" products, including smartwatches, eventually turning those products in to non-functional "bricks" with limited to no use. As the FTC explains, the failure to provide software and the failure to disclose the duration of software support is a deceptive practice that causes consumer harm that they cannot avoid:

> Manufacturers marketing a device as having certain features and then subsequently failing to provide software updates needed to maintain those features raises concerns about consumer harm resulting from deceptive practices. A representation, omission or practice is deceptive and violates the FTC Act if it is material and likely to mislead a consumer acting reasonably under the circumstances. Thus, if a manufacturer makes an express or implied representation regarding how long the product will function or be useable, it may be a deceptive practice if the manufacturer fails to disclose how long it will provide necessary software updates.
>
> Similarly, the failure to provide software updates or the failure to disclose the duration of software support raises concerns about harm consumers cannot avoid. A practice is unfair and violates the FTC Act if it is likely to cause substantial injury that could not be reasonably avoided by consumers and the injury is not outweighed by any offsetting consumer or competitive benefits that the sales practice also produces. Thus, when evaluating a manufacturer's failure to provide updates or its failure to disclose the duration of software support it is appropriate to consider the scope of injury caused by the failure, whether this injury is reasonably avoidable by consumers, and whether there may be any offsetting benefits arising from the failure to provide software updates or disclosures about the duration of software support.[1]

[1] *Smart Device Makers' Failure to Provide Updates May Leave You Smarting,* FTC Staff Perspective, November 2024, available at https://www.ftc.gov/system/files/ftc_gov/pdf/smart-device-makers-failure-to-provide-software-updates-may-leave-you-smarting.pdf [https://perma.cc/EW9W-TENT].

22. Consumer Reports also highlighted that now that every day devices are computers manufacturer control over software based functions "allows manufacturers to infringe on a consumers' ability to truly own a product" and consumers thus run the risk of spending thousands on an appliance, only for it to stop working in few years.[2]

23. This unfair software tethering gambit is the scheme that Apple engaged in here with its Apple Watches that it sold at prices as high as $799.

24. Unlike a traditional wristwatch, the Apple Watch is a miniature wearable computer colloquially called a "smartwatch." For traditional non-connected devices, a product will last until it physically fails. Connected "smart" products, however, rely on software or an accompanying app, or both, to operate. These wearable computers are functionally dependent on current watchOS software, which is the operating system that powers the device. With its watch software—watchOS—Apple provides major operating-system updates that introduce new features, improve existing functionality, enhance security, maintain compatibility with newer iPhone operating systems and third-party applications, and support the user experience.

25. Unlike traditional consumer electronics that perform substantially the same functions throughout their physical lives, connected smart devices such as the Apple Watch continue to function as they were sold only with ongoing software development. If the manufacturer stops providing these updates, the product may lose its "smart" functionality, become insecure, or completely cease to operate. The duration of software support therefore materially affects both the value of the device at the time of purchase and its expected useful life.

26. Apple introduced each of the versions of Apple Watch at issue between September 2020 and September 2022 and sold them at high price points commensurate with a functioning wrist computer.

27. Apple introduced the Apple Watch Series 6 in September 2020. Apple Watch Series 6 ranged in price from $399 to $529 depending on the size, material, and compatibility with cellular. By

[2] *See* Consumer Reports, *The Hidden Lifespan of Smart Devices*: What the FTC's Report Means for Consumers (Nov. 26, 2024), discussing the material importance of software support duration to consumers purchasing connected devices and noting that the FTC found that only a small minority of manufacturers disclose how long connected devices will receive software updates. *See* https://innovation.stage.consumerreports.org/what-the-ftc-report-means-for-consumers/ (last visited Aug. 3, 2026).

2021, the Series 6 was the most popular smartwatch model, accounting for a third of the smartwatch market at the time.

28. Apple introduced the Apple Watch Series 7 in October of 2021, while the Apple Watch Series 6 remained available for purchase on Apple website. Apple Watch Series 7 ranged in price from $399 to $849 depending on the size, material, and compatibility with cellular.

29. Apple introduced the Series 8, SE 2, and Ultra 1 in 2022. The Series 8 cost $399 for GPS and $499 for GPS + Cellular. The Series SE2 was being sold for full price ($249 with GPS and $299 GPS + Cellular) as recently as Fall 2025—less than a year before Apple retired it from ongoing software support by leaving it behind with WatchO6 27. The Ultra cost $799.

30. As it sold these Apple Watches, Apple marketed them as sophisticated wearable computers that could function similar to an iPhone—offering health monitoring, fitness tracking, communications, navigation, safety features, mobile payments, and seamless connectivity with the iPhone. Continued compatibility with evolving software is an essential component of the Apple Watches' value and functionality. Plaintiff and purchasers like him reasonably expected that these devices would continue to function as sold for the useful life of the device itself—particularly given the high prices that they paid for these watches and Apple's advertising of the Apple Watches as functional smart watches.

31. But, despite the high price point of these wearable computer watches, with the introduction of watchOS27—Apple recently retired these Apple Watches that were sold within the last few years by leaving them out of its recent watchOS update.

32. In June 2026, Apple announced its latest watchOS 27 for 2026 to 2027. Apple cut off a significant number of older models from this version, including Apple Watch Series 6, 7, 8, and Ultra. As a result of Apple's decision, those Apple Watch models became permanently ineligible to receive future major versions of watchOS and the new features, functionality, application compatibility, performance improvements, and other enhancements accompanying those releases.

33. Because Apple alone determines and controls current software support for each Apple Watch model, consumers are entirely dependent upon Apple to determine how long their Apple Watch devices will remain eligible to receive future major versions of watchOS. Because Apple alone controls those decisions and does not disclose that information to consumers, consumers also have no ability to

determine, prior to purchase, how long a particular Apple Watch model will remain eligible to receive future major versions of watchOS. As a result, consumers could not make an informed decision about the watch they were spending their money.

34. As the FTC has recognized in similar contexts, Apple's unilateral decision to discontinue the provision of software updates, as well as its failure to disclose the duration of software support raises concerns about harm consumers cannot avoid.[3] By retiring these devices from current watchOS software, Apple reduced the value of these devices and harmed Plaintiff and similarly situated purchasers. Stated otherwise, by discontinuing software support for these expensive and recently sold devices long before the expiration of their useful life, Apple has infringed on its customers' ability to truly own their watches that they spent hundreds of dollars on within the last one to six years.

**II. <u>Plaintiff's Experience</u>**

35. On or about December 17, 2022, Plaintiff purchased an Apple Watch Ultra GPS + Cellular, 49mm Titanium Case with Midnight Ocean Band directly from Apple's retail store located in San Francisco, California. Plaintiff paid approximately $799.00 for the device and simultaneously purchased AppleCare+ coverage.

36. At the time of purchase, Plaintiff was not informed, before or at the point of sale, how long the Apple Watch Ultra would remain eligible to receive future major versions of watchOS or that the device could lose eligibility for future major versions of watchOS years before a reasonable consumer would expect the hardware to reach the end of its useful life. Apple did not disclose that information to Plaintiff before or at the time of purchase.

37. Plaintiff reasonably believed that the Watch would continue to function as sold so long as the physical watch was in good condition.

38. Plaintiff reasonably relied on Apple's omissions concerning software support. Plaintiff had no way of knowing, prior to purchase, how long the Apple Watch Ultra would remain eligible to receive future major versions of watchOS because Apple did not disclose that information.

39. Had Apple disclosed that Apple would decide to discontinue current software support for

---

[3] *See* Federal Trade Commission, *Smart Device Makers' Failure to Provide Updates May Leave You Smarting* (Nov. 2024), https://www.ftc.gov/reports/smart-device-makers-failure-provide-updates-may-leave-you-smarting (last visited Aug. 3, 2026).

his Apple Watch only a few years after purchase while the device itself remained in working condition, Plaintiff would not have purchased the Apple Watch Ultra or would have paid substantially less for it.

40. When Plaintiff purchased the Apple Watch Ultra, he reasonably expected that a premium device costing approximately $799 would remain eligible to receive major watchOS updates for substantially longer than approximately four years.

41. As a direct and proximate result of Apple's conduct, Plaintiff has suffered economic injury, including diminished product value, reduced expected useful life, the loss of future major software functionality, and the loss of the benefit of his bargain.

## CLASS ALLEGATIONS

42. Plaintiff brings this action on behalf of the following California Class:

**All persons residing in California who purchased an Apple Watch Series 6, Apple Watch Series 7, Apple Watch Series 8, Apple Watch SE (2nd generation), or the original Apple Watch Ultra.**

43. Excluded from the Class are Defendant, Defendant's officers, directors, employees, affiliates, subsidiaries, and agents; counsel for Plaintiff and Defendant; the judicial officers to whom this action is assigned and their immediate families; and any person who timely and validly excludes himself or herself from the Class.

44. Plaintiff reserves the right to amend or modify the Class definitions as discovery and further investigation reveal additional facts.

45. **Numerosity**: The members of the proposed Class are so numerous that joinder of all members is impracticable. Upon information and belief, Apple sold hundreds of thousands, if not millions, of the affected Apple Watch models throughout the United States. The precise number and identities of Class Members are ascertainable through Apple's records and other appropriate discovery.

46. **Commonality and Predominance**: This action presents questions of law and fact common to the Class that predominate over questions affecting only individual members, including, but not limited to:

a. whether Apple engaged in unfair software tethering or bricking practices with respect to the Apple Watches;

b. whether Apple's alleged unfair acts and omissions violated the consumer protection statutes asserted herein;

c. whether Apple breached the implied covenant of good faith and fair dealing, including whether Apple acted in bad faith and contrary to consumers' reasonable;

d. whether Plaintiff and Class Members suffered economic injury as a result of Apple's conduct;

e. whether Plaintiff and Class Members are entitled to damages, restitution, equitable relief, injunctive relief, attorneys' fees, costs, or other appropriate relief.

47. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class because Plaintiff, like all Class Members, purchased an affected Apple Watch model and suffered substantially similar economic injury as a result of Apple's alleged unfair software tethering conduct.

48. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff has no interests antagonistic to those of the Class, has retained counsel experienced in complex consumer class action litigation, and intends to prosecute this action vigorously on behalf of the Class.

49. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members are relatively modest compared to the cost of individual litigation, separate actions would be economically impracticable. A class action will conserve judicial resources, avoid inconsistent adjudications, and provide an efficient mechanism for resolving the claims of Plaintiff and the proposed Class.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT INCLUDING BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

*(On Behalf of the California Class)*

50. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

51. Plaintiff and Class Members entered into contracts with Apple when they purchased their Apple Watch devices.

52. Those contracts included not only the sale of premium hardware, but also Apple's continuing provision of the software ecosystem necessary for the Apple Watch to function as marketed,

including eligibility to receive future major versions of watchOS consistent with reasonable expectation of consumers that the device would continue to operate while in good physical condition.

53. Every contract contains an implied covenant of good faith and fair dealing requiring that neither party do anything that will unfairly interfere with the other party's right to receive the benefits of the agreement.

54. The implied covenant required Apple to exercise any discretion concerning software support for the Watches in good faith, and in a manner consistent with the reasonable expectations of consumers purchasing premium connected devices.

55. Apple breached the implied covenant of good faith and fair dealing by intentionally deciding to exclude the Apple Watches from watchOS updates long before the end of the useful life of the devices and long before Plaintiffs and Class Members would have expected their watches to reduce functioning and/or cease functioning.

56. Plaintiff and Class Members performed all obligations required of them under their contracts with Apple.

57. As a direct and proximate result of Apple's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered damages, including diminished product value, reduced expected useful life, and other economic injury.

**<u>SECOND CAUSE OF ACTION</u>**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(UNFAIR PRONG)**
(*On Behalf of the California Class*)

58. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

59. California Business and Professions Code section 17200 prohibits any unlawful, unfair, or fraudulent business acts or practices.

60. Federal consumer protection authorities have recognized that manufacturers' unilateral decision to remove software support from connected devices, including smart watches—only a few years after sale before the end of the useful life of the devices—causes unavoidable consumer harm. Indeed, Apple's software tethering practices discussed above force consumers to continually buy Apple Watches every few years, deprive consumers of the ability to make an informed decision as they buy Apple Watches,

and interfere with consumers' ability to truly own the watches they paid hundreds of dollars for.

61. Consumers could not reasonably have avoided this injury because only Apple possessed information its plan to provide software updates.

62. The harm suffered by Plaintiff and Class Members outweighs any countervailing benefit associated with Apple's premature deprivation of software support updates.

63. Had Plaintiff and Class Members known that Apple intended to terminate eligibility for future major versions of watchOS when it did, they would not have purchased the affected Apple Watch devices or would have paid substantially less for them.

64. As a direct and proximate result of Apple's unfair business practices, Plaintiff and Class Members have suffered injury in fact and lost money or property.

65. Plaintiff and Class Members seek restitution, injunctive relief, declaratory relief, attorneys' fees where authorized by law, costs, and all other relief available under California Business and Professions Code section 17203 and other applicable law.[4]

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in favor of Plaintiff and the proposed Class and against Defendant Apple Inc., and award the following relief:

A. Certifying this action as a class action pursuant to applicable law, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding actual, compensatory, and consequential damages according to proof;

C. Awarding restitution, disgorgement, and all other equitable monetary relief authorized by law;

D. Awarding declaratory relief declaring that Apple's conduct, as alleged herein, violates applicable law;

E. Awarding appropriate injunctive relief;

[4] There are no adequate remedies at law to remedy future harm of the kind addressed by injunctive relief. For restitution stemming from Apple's unfair software tethering practices, legal contract remedies may be inadequate as they are more difficult to prove, unavailable, or otherwise inadequate.

F. Awarding pre-judgment and post-judgment interest as permitted by law;

G. Awarding reasonable attorneys' fees, litigation expenses, and costs of suit as authorized by applicable law;

H. Awarding punitive or exemplary damages to the extent authorized by law;

I. Granting such other and further legal, equitable, or declaratory relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 12, 2026

**TYCKO & ZAVAREEI LLP**

By: */s/ Annick M. Persinger*

Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**

*Attorney for Plaintiff and the Putative Class*